Oscar B. McGlasson, Appellant, v. Durand-McNeil-Horner Company, Now Known as Fairbanks Court Wholesale Grocery Company, Appellee.

**Gen. No. 36,441.**

Opinion filed December 13, 1933.

ALFRED ROY HULBERT, for appellant.

MAYER, MEYER, AUSTRIAN & PLATT, for appellee.

MR. JUSTICE HEBEL delivered the opinion of the court.

This is an appeal from a judgment of $550 entered by the court in favor of the defendant upon his plea of set-off. The plaintiff's action against the defendant is upon a written contract, by the terms of which the defendant employed the plaintiff as its general counsel for a period of five years from October 1, 1926, at an annual retainer of $3,000, payable in instalments of $250 a month.

It is alleged in the plaintiff's declaration that in pursuance of the contract, the defendant paid the plaintiff $250 a month from October 1, 1926, until February, 1929, when the defendant refused to continue payments from that time until the end of the contract period, which was September 30, 1931.

The defendant filed a plea of the general issue, supported by an affidavit of merits, together with a plea of set-off. A trial was had before the court without a jury, which resulted in a judgment for the defendant.

The pleading in this proceeding is not questioned by either of the parties. The contract in question provides that the defendant: "hereby retains the said Oscar B. McGlasson (the plaintiff) as its general counsel for a period of five years, from October 1, A. D. 1926, up to and including September 30, A. D. 1931, at a retainer of Three Thousand ($3,000) Dollars for each of said five years for the corporation and said retainer shall be paid in monthly installments of Two Hundred Fifty Dollars ($250) per month, payable on the first day of each and every month, during the said period of five years." The last payment of $250 under the terms of the contract was for the month of January, 1929. The plaintiff's action is for the unpaid

balance of $8,000, which the plaintiff contends was due and payable by the terms of the contract. The plaintiff at the time of the institution of the suit was a stockholder and a director of the defendant, in addition to being general counsel for this corporation. He was retained as such by the defendant, and received the retainer payable in monthly instalments until February, 1929.

The plaintiff, in February, 1929, sold his stockholdings in the defendant company and received therefor an approximate sum of $23,000. During the time the plaintiff was retained as general counsel for the defendant company he was also a cotrustee, together with the Union Bank of Chicago, for Charles McNeil, a brother-in-law of the plaintiff. Certain of the McNeil properties, which included preferred stock of the defendant company, were held by the trustees until about September 19, 1928, when the plaintiff resigned, with his cotrustee, the Union Bank of Chicago. Thereafter, Judge Charles F. McKinley, formerly of the municipal court of Chicago, and the American Safe Deposit Company were appointed successors in trust for Charles McNeil, and received the trust properties.

It appears from the evidence that the defendant had not paid dividends upon its preferred stock for a period of several years. The plaintiff discussed the question of the payment of dividends with Charles McNeil, his brother-in-law, prior to the plaintiff's resignation as a trustee of the McNeil trust estate, and also discussed the matter with John J. McMahon, who was retained by McNeil as his attorney. These discussions took place in July or the early part of August, 1928. It became apparent from these discussions that the plaintiff could not be a party to a suit to force the company to pay dividends without jeopardizing his contract for services as attorney for the defendant company.

It further appears from the evidence of Judge Charles F. McKinley that in a conference with the plaintiff he indicated to those present that he, the plaintiff, would like to see McNeil get his money; that the plaintiff was willing and wanted to help McNeil, but could not do so openly because of his position with the company. The plaintiff also furnished financial statements of the defendant to John J. McMahon, attorney, and also furnished him with the case of *Cratty v. Peoria Law Library Ass'n,* 219 Ill. 516, authority for an action to compel the payment of dividends. There is evidence in the record that the plaintiff advised McMahon he had no doubt that by the filing of a bill, a sufficient showing could be made to cause the court to appoint a receiver, and used these words:

"If you (McMahon) can get a friendly judge maybe you can get—maybe I can get in as receiver, and we can work something out of this."

The plaintiff appreciated the fact that he could not as an attorney represent diverse causes at the same time. As a trustee for McNeil he had certain duties to perform and when called upon by him to demand that the defendant declare a dividend and pay to the estate of McNeil certain dividends due, he, the plaintiff, was in a position where he had to determine whether he could represent the cause of his brother-in-law McNeil, or that of the defendant. He, however, after a conference with the parties in interest, properly resigned, but unfortunately did not cease advising and encouraging the attorney for McNeil to proceed by suit to compel the defendant to declare and pay dividends on the stock of McNeil, which was a part of the trust estate. This action would benefit the plaintiff as owner of stock in the defendant company. He offered his services, but not to act openly to aid in the proceeding to compel the declaration of dividends. He went so far as to suggest that McMahon file a bill in

equity, and the possibility of a friendly judge appointing the plaintiff as receiver of the defendant. This action violated a duty to his client, the defendant, and it was not ethical for him to serve an adverse interest. The plaintiff's motives may have been honest, as he believed the defendant was financially able to declare dividends. However, as a stockholder, his was a selfish interest in the matter of dividends, and the suggestion of his appointment as receiver was not proper, and certainly was not consistent with his duty to the defendant.

The opinion of the court in the case of *Strong v. International Bldg. Loan & Invest. Union,* 183 Ill. 97, is pertinent in the instant case upon the question of the duty of the plaintiff to his client, the defendant, and it is declared:

"Attorneys at law cannot thus accept employment from adverse litigants at the same time and in the same controversy. Nor does it matter that the intention and motives of the lawyers are honest, as we fully believe them to have been in the present instance. The rule is a rigid one, and designed not alone to prevent the dishonest practitioner from fraudulent conduct, but as well to preclude the honest practitioner from putting himself in a position where he may be required to choose between conflicting duties, or be led to an attempt to reconcile conflicting interests rather than to enforce to their full extent the rights of the interest which he should alone represent."

The plaintiff also contends that he should have been granted a new trial by the court on the ground of newly discovered evidence. Affidavits of the plaintiff and of Charles McNeil were considered by the court in passing upon the motion. During the course of the trial there was evidence regarding the delivery of the file of the McNeil estate, which contained financial statements and clippings of the company, by the plaintiff

to McMahon, the attorney. The affidavits are to the effect that McNeil delivered the file to McMahon. Proper diligence is not shown by the affidavits, especially when we consider that there is no showing by the plaintiff of his inability to produce McNeil as his witness upon the trial. The significant fact in this case is, however, that McMahon received the file containing information which was in the possession of the plaintiff as trustee, and this court is of the opinion that because of failure of the plaintiff to show proper diligence and inability to produce McNeil, the trial court did not err in refusing to grant a new trial on the ground of newly discovered evidence.

It is suggested by the defendant that the judgment entered upon the defendant's plea of set-off for the sum of $550, admitted by the plaintiff to be due for monies collected, should have been against the plaintiff for $1,800, this amount to include the sum received at the rate of $250 a month for a period of five months. The defendant paid the monthly payments required by the contract during the time plaintiff was urging and aiding the institution of an action to compel the payment by the defendant of dividends. Such acts were unknown to the defendant when the payments were made. Public policy requires that the plaintiff, under the circumstances, refund the sum of $1,250 received from the defendant as its counsel during that time.

The trial court did not err in its finding denying the plaintiff the right to recover the balance of the amount alleged to be due under the retainer contract with the defendant. *Strong v. International Bldg. Loan & Inv. Union, supra.* It necessarily follows that the defendant upon its plea of set-off should recover the amount paid to the plaintiff during the time the plaintiff failed in his duty to the defendant under the contract between the parties. This the trial court did not allow, and for this error a proper judgment will be entered by this

court. The judgment of the trial court is therefore reversed in part, and, on cross error assigned by the defendant, judgment will be entered in this court for $1,800 in favor of the defendant and against the plaintiff, which includes the amount of $550 allowed by the trial court upon the defendant's plea of set-off.

Reversed in part on cross error and judgment in this court with a finding of fact.

*Reversed in part and judgment here with a finding of fact.*

HALL, P. J., and WILSON, J., concur.

Finding of fact: The court finds as a fact that the plaintiff was retained by defendant as its counsel upon a written contract of retainer at an annual sum of $3,000, payable in monthly instalments of $250; that during the months of September, October, November and December, 1928, and January, 1929, the plaintiff conferred with and advised Charles McNeil and his attorney regarding the filing of an action against the defendant to compel the defendant to pay dividends on the preferred stock of the defendant corporation, which was in violation of his duty as attorney for the defendant under the contract between the parties, and in doing so the plaintiff acted unknown to the defendant at the time the monthly payments were made; that for the period from September 1, 1928 to February, 1929, for the money received by the plaintiff a proper judgment will be entered upon the plea of the defendant's set-off, the sum of $1,250 will be added to the $550 allowed by the trial court, and judgment for the sum of $1,800 will be entered.